IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAUL A. MILLER,

Petitioner,

v.

CASE NO.  12-3245-SAC

ELLEN MITCHELL, Saline
County Attorney, et al.,

Respondents.

MEMORANDUM AND ORDER

Petitioner is currently incarcerated in the District of
Kansas upon convictions by a jury, after an initial mistrial, of
rape, aggravated criminal sodomy and aggravated indecent
liberties with a child.  He appealed these convictions to the
Kansas Court of Appeals and the Kansas Supreme Court.  His
appeals were turned aside.  This matter is now before the court
upon petitioner's request for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  For the reasons set forth below, the court
shall deny the petition for habeas relief.

I.  STANDARDS OF REVIEW

The standards this court must apply when reviewing
petitioner's § 2254 challenge to matters decided in state court
proceedings were set forth in *Frost v. Pryor*, 749 F.3d 1212,
1222-24 (10th Cir. 2014):

Our review is . . . governed by AEDPA, which "erects a formidable barrier to federal habeas relief," *Burt v. Titlow*, --- U.S. ----, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013), and "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir.2013); see also *Hooks v. Workman*, 689 F.3d 1148, 1162-63 (10th Cir. 2012)("This highly deferential standard for evaluating state-court rulings demands state-court decisions be given the benefit of the doubt." (quotations omitted)).

Under AEDPA, we may not grant a state prisoner's petition under § 2254 with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 783-84, 178 L.Ed.2d 624 (2011).

"Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Lockett*, 711 F.3d at 1231 (quotations omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quotations omitted).

A state court decision is an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)(opinion of O'Connor, J.); accord *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). "Evaluating whether a rule application was unreasonable requires considering

the rule's specificity. The more general the rule . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). An "unreasonable application of federal law" is therefore "different from an incorrect application of federal law." *Id.* at 785 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495 (opinion of O'Connor, J.)).

We may "issue the writ" only when the petitioner shows "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 786 (emphasis added). Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Titlow*, 134 S.Ct. at 16 (quoting *Richter*, 131 S.Ct. at 786). Indeed, AEDPA stops just "short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 131 S.Ct. at 786. Accordingly, "[w]e will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Titlow*, 134 S.Ct. at 16 (quoting Richter, 131 S.Ct. at 786).

In making this assessment, however, "we review the district court's legal analysis of the state court decision de novo" and its factual findings, if any, for clear error. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011)(quotations omitted). Finally, our review is "limited to the record that was before" the [state appellate court]. *Cullen v. Pinholster*, ---U.S. ----, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

(footnote omitted).

## II.   FACTUAL BACKGROUND AND HISTORY OF PROCEEDINGS

The following review of the facts is taken almost completely from the opinion of the Kansas Supreme Court in the

direct appeal of the underlying prosecution, *State v. Miller*, 264 P.3d 461 (Kan. 2011). Petitioner has expressed no objection to the Kansas Supreme Court's review of the facts[1] and the court finds no grounds to stray from it after reviewing the record in this case. See *Stouffer v. Trammell*, 738 F.3d 1205, 1211 (10th Cir. 2013)(fact findings of the state court are presumed correct unless habeas petitioner presents clear and convincing evidence otherwise).

A. <u>Evidence presented during the two trials</u>

There were two trials in this matter. The first trial ended when a mistrial was declared during the closing argument of the prosecution. The evidence presented during the two trials was very similar. The following recitation of evidence presented at the second trial also describes evidence presented at the first trial.

The victim of the crimes in this matter has been referred to as "N.A." N.A. was four years old on July 19, 2005, when petitioner stopped by her family's home in the early evening. Petitioner was a trusted family friend who visited often and occasionally spent the night. N.A. watched movies with petitioner in the living room that evening and petitioner ended up sleeping on a loveseat in the living room while N.A. slept on

---

[1] As discussed later, petitioner does contend that the Kansas Supreme Court failed to acknowledge legal objections petitioner's counsel registered at trial.

the living room couch.  Other members of the family, including N.A.'s mother and her fiancé, were also in the home.

The next morning, petitioner left and that evening N.A.'s mother asked N.A. if she wanted petitioner ("Uncle Saul") to spend more time watching movies at the home.  N.A. said "no," and explained that petitioner had "hurt her."  N.A. pointed to her vaginal area and told her mother that petitioner had "touched her with his thingy and his fingers."  N.A. also stated that petitioner had held her arms down and her mouth shut during the assault.  When asked why she did not say something to her mother before, N.A. said that petitioner told her not to tell her parents.  N.A.'s mother and grandmother examined N.A.'s vaginal area and determined that it was very red and irritated.

Law enforcement was contacted and N.A. was taken to the hospital where she was examined by a Sexual Assault Nurse Examiner ("SANE").  The examination found several tears and abrasions on N.A.'s vagina and anus, but no signs of handprints, bruising, discoloration or scraping on N.A.'s arms or mouth.  Photographs of the injuries were admitted into evidence.

Law enforcement decided to interview petitioner.  At first, petitioner did not admit to any inappropriate touching, but eventually agreed to tell police "what really happened" in exchange for a cigarette.  Petitioner then admitted, orally and in writing, to touching N.A.'s vagina with his hand, both on top

of and underneath her underwear and to inserting his finger into
N.A.'s vagina.   He did not admit to using his penis for
penetration or to any anal penetration.   Petitioner said this
occurred while N.A.'s mother was nearby using a computer and her
fiancé was upstairs.

Petitioner testified that he was pressured into making a
confession and denied all of the charges against him.

B. <u>Pretrial rulings before the first trial</u>

Before the first trial, a pretrial hearing was conducted to
determine whether N.A.'s statements to her mother, grandmother
and the SANE were admissible, assuming that N.A. would be
unavailable to testify at the trial.   The trial judge found that
N.A.'s statements to her mother and grandmother were
nontestimonial and, therefore, could be admitted.   As for N.A.'s
statements to the SANE, the trial judge held that the SANE could
testify as to N.A.'s statements of "what happened" because such
statements related to the examination and treatment of injuries.
This testimony was considered medically relevant.   But, the
trial judge ruled that the SANE could not testify as to N.A.'s
statements regarding who caused her injuries, the location of
the alleged assault, or when the alleged assault occurred.   This
ruling apparently was intended to prevent any reference to
N.A.'s alleged assailant as "he" when the SANE referred to

N.A.'s statements, although this was not expressly stated by the trial judge when he made his ruling.

C. <u>First trial proceedings</u>

During the first trial, which started on February 28, 2007, N.A. was called to the witness stand but was nonresponsive to an oath to tell the truth and responded negatively when asked if she knew what it meant to tell the truth and whether she would answer some questions.  So, the trial judge ruled that N.A. was unavailable to testify.

The prosecutor stated during her opening statement at the first trial that: "N.A. told the nurse he put his thingy in her private, he put his finger in her butt, took it out, licked it, and the nurse, based on that information conducted an examination."  There was no objection by petitioner's counsel when the statement was made.  But, later in the trial, the trial judge indicated that he believed the prosecutor's remark violated his pretrial ruling that statements from N.A. to the SANE could not be used to identify who allegedly assaulted N.A.

Also during the first trial, when the prosecutor asked the SANE what N.A. told her, the SANE testified that N.A. said she was watching TV with a man and that he had held her arms tight. At that point, petitioner's counsel objected and asked for a mistrial.  The prosecutor told the trial judge that she had covered the judge's admonition with the SANE prior to the

testimony that she had not expected the testimony.  The trial judge agreed that this testimony violated his pretrial ruling, but denied the mistrial motion and, instead, ordered that the SANE's statement be stricken and disregarded by the jury.[2]

Petitioner made a second mistrial motion during closing statements after the prosecutor stated:

"[T]he State contends that the prohibited or illegal act was anal penetration, however slight, by any body part or object, and, again, [N.A.] told [the SANE] that the defendant stuck his finger in her butt, pulled it out and licked it."

The trial judge granted the second mistrial motion, noting that this was the third time that the prosecutor had violated the court's rulings – the first time being during opening statements, even though no objection was lodged at that time.

D. Proceedings leading to the second trial

Prior to the second trial, the court heard arguments upon petitioner's motion to dismiss on double jeopardy grounds.  The trial court denied the motion finding that the prosecutor's actions did not intentionally goad petitioner into deciding whether he had to either request a mistrial or proceed along with inadmissible evidence and improper commentary.

_____

[2]     The SANE later testified at the first trial that N.A. said "a person had slid her underwear aside and put his thingy on her privates and then he put his finger in her butt and took it out and licked it afterwards."  There was no objection to this testimony.

Also prior to the second trial, which was a month or two after the end of the first trial, the trial court took judicial notice of the prior ruling that N.A. was unavailable as a witness.  In other words, the trial court ruled that N.A. would not testify at the second trial without conducting a hearing to determine if N.A. would be willing and capable to testify under oath.  Petitioner's attorney did not object to this finding.

   E. Second trial proceedings

The evidence during the second trial was as previously described.  The SANE testified that N.A. told her that "a person had held her arms and at times put his hand on her mouth and that he had moved, she had on a shirt and underwear and that the person had moved her underwear aside and put his thingy on her private, that he had put his finger in her butt and took it out and licked it."  There was no specific objection registered to this testimony.

   The jury found petitioner guilty of rape, aggravated criminal sodomy and two counts of aggravated indecent liberties with a child.

III.   THE COURT SHALL REJECT PETITIONER'S ARGUMENTS FOR HABEAS RELIEF.

   A. The Kansas Supreme Court's denial of petitioner's double jeopardy claim is not unreasonable.

Petitioner's first argument for habeas relief is that his constitutional right against double jeopardy was violated by the decision to permit a second trial after a mistrial was declared. The Double Jeopardy Clause of the Fifth Amendment to the Constitution protects a criminal defendant from repeated prosecutions for the same crime. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). When a mistrial is ordered upon the request of a defendant, the proscription against double jeopardy is narrowly applied. *Id.* at 673. A court must find that the prosecutor intended to provoke the defendant to move for a mistrial, before it may find that a retrial is barred by the Double Jeopardy Clause. *U.S. v. Tafoya*, 557 F.3d 1121, 1126 (10th Cir.) *cert. denied*, 557 U.S. 928 (2009). Carelessness or a mistake by the prosecution is insufficient to bar a retrial. *U.S. v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992) *cert. denied*, 507 U.S. 946 (1993).

It appears clear from the Kansas Supreme Court's opinion that the court thought the prosecutor was credible in asserting that she did not intend to provoke a mistrial. The prosecutor had presented evidence against petitioner from N.A.'s mother and grandmother, as well as petitioner's confession. There were no rulings against the prosecution or other setbacks which would have motivated a prosecutor to attempt to provoke a second trial. The court reviewed the specific violations of the trial

court's in limine order. The court determined that the
prosecutor did not intend to violate the trial court's
restrictions in her opening statement because the trial judge's
statements were somewhat vague and the prosecutor stated that
she had written out her opening statement and thought it
conformed to the trial court's order. As for the second
violation – the testimony of the SANE – the Kansas Supreme Court
remarked that it was unclear whether the reference to N.A.'s
statement that she watched television with a "man" violated the
trial court's order. The court further noted that the
prosecutor asserted that she had discussed the trial court's
order with the SANE prior to her testimony to avoid any
violation. As for the final violation – the prosecutor's
closing argument – the Kansas Supreme Court held that it was not
an intentional effort to goad defendant into asking for a
mistrial because the prosecutor seemed satisfied with the course
of the trial at that point. The evidence and the rulings of the
trial court appeared to be leading to a result favorable to the
prosecutor.

The state court's findings as to double jeopardy are
neither contrary to clearly established federal law or based on
an unreasonable determination of the facts. A reasonable jurist
could decide on this record that there was no intent to goad the
petitioner into asking for a mistrial and, therefore, there was

11

no violation of the Double Jeopardy Clause when the case was retried.     Accordingly,   the   court   rejects   petitioner's   first argument for relief.

B.  Petitioner's  claims  of  prosecutorial  misconduct  were reasonably rejected by the Kansas Supreme Court.

1.   Petitioner's  claim  that  the  prosecutor  elicited improper  testimony  from  the  SANE  was  not  preserved  for  review and would not have been successful if he had been reviewed.

Petitioner's     second     argument     for     relief     alleges prosecutorial misconduct in two ways.  First, petitioner asserts that the prosecutor elicited improper testimony from the SANE. Petitioner  alleges  that,  although  the  trial  court  prohibited testimony from the SANE that N.A. identified petitioner as the person who committed the alleged crimes, the SANE gave such testimony  during  the  second  trial.    Petitioner  does  not specifically identify what the testimony was, and does not indicate that petitioner objected to the testimony when it was given.

The  Kansas  Supreme  Court  referred  to  the  following testimony from the SANE during the second trial when it examined petitioner's appeal.

> She [N.A.] told me that a person had held her arms and
> at times put his hand on her mouth and that he had
> moved, she had on a shirt and underwear and that the
> person had moved her underwear aside and put his
> thingy on her privates, that he had put his finger in
> her butt and took it out and licked it.

264 P.3d at 472.   The court held that petitioner waived his right to appeal on this issue by failing to object to the testimony at the time of trial.

While petitioner may point to standing objections he was granted as to hearsay testimony which might violate his rights under the Confrontation Clause, those objections are not pertinent here because, as the Kansas Supreme Court explained, petitioner was <u>granted</u> his objection to a portion of N.A.'s statements to the SANE.   Now, petitioner claims that the order granting his objection was violated, but he failed to claim that violation during the trial.   To proceed with that claim on appeal, petitioner needed to object to the testimony during the second trial as he did at the first trial.   *Miller*, 264 P.3d at 472-73 (citing *State v. Crum*, 184 P.3d 222, 234 (Kan. 2008)); see also, *State v. Decker*, 66 P.3d 915, 920 (Kan. 2003); *State v. Moncla*, 936 P.2d 727, 735 (Kan. 1997).

The United States Supreme Court has stated that "a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012)(interior quotations omitted). In this instance the state procedural rule requiring an

objection to preserve an issue for appeal is an "independent" ground because it is based upon state law and it was relied upon by the state supreme court. See *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) *cert. denied*, 537 U.S. 841 (2002). State procedural grounds are "adequate" if the state procedural rule is strictly and regularly followed and applied evenhandedly to all similar claims. *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012) *cert. denied*, 133 S.Ct. 2397 (2013). In Kansas, the rule requiring a timely objection to evidence in order to overturn a verdict is strictly and evenly applied. See *Torres v. Roberts*, 253 Fed.Appx. 783, 787 (10th Cir. 2007)(Kansas preservation rule is an independent and adequate state law ground to default claims); *Carr v. Koerner*, 120 Fed.Appx. 772, 775-76 (10th Cir. 2005)(same, citing K.S.A. 60-404). The only exception to the denial of review of procedurally defaulted claims is when petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. *McCracken*, 268 F.3d at 976.

Petitioner has offered no grounds for the court to find that either 1) he objected to the testimony at trial; or 2) that the state procedural rule requiring an objection to preserve an issue on appeal is not an independent and adequate state procedural requirement. Further, petitioner does not argue that

there is cause or prejudice excusing the failure to object at trial or that a review of petitioner's argument is necessary to prevent a fundamental miscarriage of justice.   For these reasons, the procedural default doctrine precludes relief upon petitioner's first claim of prosecutorial misconduct.

Finally, even if it were determined that petitioner had properly objected to the testimony, the court does not believe that the testimony given by the SANE at the second trial denied plaintiff his right to confront witnesses at trial because the particular statement from N.A. to the SANE was nontestimonial as explained by the Kansas Supreme Court and discussed in section III(C) of this opinion.

2.  Petitioner's claim of prosecutorial misconduct during the closing statement does not warrant habeas relief.

Petitioner's second claim of prosecutorial misconduct asserts that the prosecutor made improper remarks during the closing argument of the second trial.  These remarks asked the jury to:

> [T]hink how frightened four-year-old [N.A.] was that night, when an adult family friend begins to touch her.  Is it too much to believe that she was so terrified that she didn't cry out, or that she didn't do anything, and that she didn't run?  Is it so hard to believe that maybe she didn't even understand what was happening to her? . . . And is it so hard to believe that she didn't do anything about it until the defendant left the house, and she didn't tell until mom suggests, "Hey, should we have Uncle Saul come back again and watch some movies?"

Petitioner asserts that these comments constituted an improper appeal for compassion for N.A.

The Tenth Circuit has stated that "[a]llegations of prosecutorial misconduct are reviewed under a due process analysis" and that "[c]ourts must examine alleged misconduct in the context of the entire proceeding, including the strength of the evidence against the petitioner." *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013)(internal citations and quotations omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Wilson v. Sirmons*, 536 F.3d 1064, 1117 (10th Cir.2008) (quotations omitted). "A prosecutor's improper statement is reversible only if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Stouffer*, 738 F.3d at 1221 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

The Kansas Supreme Court found that the prosecutor's remarks were responsive to defense counsel's closing argument which questioned why no one heard or saw anything in N.A.'s house while N.A. allegedly was being assaulted.  This was a reasonable finding.  The court is confident that the prosecutor's closing argument would not cause a jury to unfairly evaluate the evidence.  Therefore, the court rejects petitioner's second claim of prosecutorial misconduct.

C.  Petitioner's  arguments  relating  to  the  Confrontation Clause and hearsay do not warrant habeas relief.

Petitioner's  third  argument  for  habeas  relief  makes constitutional  and  state  law  arguments.   The  constitutional argument is based upon the Confrontation Clause inside the Sixth Amendment.   Petitioner  claims  that  the  trial  court  violated petitioner's  Sixth  Amendment  rights  by  admitting  N.A.'s statements  at  trial  without  providing  petitioner  an  opportunity to  confront  and  cross-examine  N.A.  regarding  those  statements. This  argument  appears  confined  to  the  admission  of  N.A.'s statements through the testimony of the SANE.[3]   Petitioner also mentions  the  admission  of  hearsay  and  alleges  a  violation  of "K.S.A.  60-460(d)."   We  assume  that  petitioner  means  K.S.A.  60-460(dd)  because  that  is  the  provision  involving  child  witnesses which  was  argued  in  the  state  court  proceedings.[4]   Petitioner further  claims  that  the  district  court  should  have  ordered  N.A. to  testify  via  closed  circuit  television.   State  law,  K.S.A.  22-3434,  allows  a  child  victim  to  testify  via  closed-circuit television  if  the  court  finds  that  testifying  in  the  courtroom

---

[3]   If  the  court  construed  the  petition  as  making  a  Sixth  Amendment challenge  to  the  admission  of  N.A.'s  statements  through  the  testimony  of N.A.'s mother and grandmother, the court would not grant habeas relief on the basis of that argument.   The trial court made a correct judgment that N.A.'s statements  to  her  mother  and  grandmother  were  nontestimonial  and  therefore did  not  trigger  the  right  to  cross-examination  extended  by  the  Sixth Amendment's Confrontation Clause.

[4]   K.S.A.  60-460(d)  involves  the  excited  utterance  exception  to  the hearsay rule.

would traumatize the child to the extent that the child would be prevented from reasonably communicating with the jury.

     1. <u>Petitioner's   Confrontation   Clause   claim   was reasonably decided by the state court.</u>

The Kansas Supreme Court's decision to affirm the admission of N.A.'s statements to the SANE was reasonable and not contrary to clearly established federal law.   The Kansas Supreme Court engaged in a thorough discussion of petitioner's Sixth Amendment claim as it related to the SANE's testimony that N.A. told her:

> a person had held her arms and at times put his hand on her mouth and that he had moved, she had on a shirt and underwear and that the person had moved her underwear aside and put his thingy on her privates, that he had put his finger in her butt and took it out and licked it.

The court explained that under *Crawford v. Washington*, 541 U.S. 36 (2004), whether the admission of hearsay statements violated the Confrontation Clause of the Constitution depended upon whether the statements were categorized as "testimonial" or "non-testimonial."   264 P.3d at 476.   The court looked at four factors to determine whether the N.A.'s statements to the SANE were testimonial:  1) whether an objective witness would believe the statements would later be available for use in the prosecution of a crime; 2) whether the statements were made to a law enforcement officer or to another government official; 3) whether the primary purpose of the interview was to develop facts relevant to a later prosecution; and 4) whether the level

of formality of the statement was sufficient to make it inherently testimonial. *Id.* at 477-478.

The court analyzed the role and actions of the SANE and concluded that she acted for the dual purpose of medical treatment and evidence collection. The court concluded that there was no emergency when N.A. made her statements to the SANE but there was an injury or a concern of injury which provided a medical purpose to the interview. The absence of an emergency allowed for a more formal environment for an interview than is sometimes the case, but the court held that the formality was not inconsistent with a medical purpose. When considering the "primary purpose" of N.A. and her mother, the court stated:

> Objectively a parent of a small child who reported rape and sodomy would be concerned and would want a physical examination to determine if treatment was necessary, especially if, as in this instance, the child reported she was "hurting down in her vagina." It is also significant that the reporting officer had already conducted interviews. Under those circumstances, objectively the person consenting to and providing information to a health care professional would consider the purpose of statements to be to assist in medical diagnosis and treatment. N.A.'s mother may have understood there would be collection of physical evidence, but it is unlikely she would have understood that any statements N.A. made to the SANE were primarily for criminal prosecution.
> Objectively, we conclude N.A.'s and her mother's purpose in answering the SANE's questions was to direct the SANE to N.A.'s injuries, not to provide evidence for the prosecution of Miller.

*Id.* at 489.  The court acknowledged that the SANE testified that she performed certain tasks in order to collect evidence consistent with the sexual assault evidence collection kit. But, given the clear evidence of N.A.'s pain and injury and that a follow-up examination was conducted the next week, the court concluded that N.A.'s statements to the SANE could not be categorized as testimonial.  The court summarized its analysis was follows:

> An objective evaluation of the totality of the circumstances leads us to the conclusion that N.A.'s statements in response to the SANE's inquiry about what happened were nontestimonial.    These circumstances include N.A.'s age, her complaint that she was "hurting," the mother's decision to seek medical treatment independent of any request to do so by law enforcement officers, the SANE's action of asking questions common to all medical examinations, and the SANE's action of providing some medical treatment.

*Id.* at 490.

The Kansas Supreme Court's conclusion is consistent with the results reached in other cases considering this question. *Goza v. Welch*, 2011 WL 9686905 *9-13 (N.D.Ohio 2011)(statements by child victim to a SANE and a social worker); *United States v. Squire*, 72 M.J. 285 (C.A.A.F. 2013)(statements by child victim to a doctor); *State v. Arnold*, 933 N.E.2d 775, 784-86 (Ohio 2010)(statements by child victim for purpose of medical diagnosis and treatment); *State v. Hill*, 2014 WL 5586810 (Ariz.App. 2014)(statement to a forensic nurse in emergency

room); *Williams v. State of Texas*, 2014 WL 895506 *2-3 (Tex.App. 2014)(statements to a SANE); *Herrera v. State of Texas*, 2013 WL 4859311 *2-4 (Tex.App. 2013)(statements by elderly victim to a SANE and a psychologist); *Fino v. State*, 2013 WL 1639256 *3-6 (Tex.App. 2013)(statements made to SANE by child victim's mother); see also, *Dorsey v. Banks*, 749 F.Supp.2d 715, 749-52 (S.D.Ohio 2010)(on habeas review, finding that admission of statements to a SANE was possibly erroneous but not an unreasonable application of the Confrontation Clause); *McLaury v. State of Wyoming*, 305 P.3d 1144 (Wyo. 2013)(statement made to SANE by adult victim satisfies Wyoming state law hearsay exception for statements for purposes of medical diagnosis).

There is contrary authority as discussed by the Kansas Supreme Court and in some of the above-listed cases. Indeed, the Kansas Court of Appeals viewed the statements to the SANE to be testimonial in petitioner's underlying appeal.[5]  *State v. Miller*, 208 P.3d 774, 783-87 (Kan.App. 2009).  Our conclusion upon review of the record and other case authority is that petitioner has failed to show that the Kansas Supreme Court's decision is contrary to a rule set forth in Supreme Court cases or otherwise an unreasonable application of federal law. Therefore, the court shall deny relief on the basis of

---

[5]   The court concluded, however, that the admission of the "testimonial" statements was harmless error.

petitioner's claim that his Sixth Amendment rights were violated.

2. Petitioner's state law claims do not warrant habeas relief.

Petitioner's claims that the trial court misapplied the hearsay rule or should have ordered N.A. to testify via closed circuit television are state law arguments which do not provide a basis for habeas corpus relief. See *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(habeas relief does not lie for errors of state law); *Wilson v. Jones*, 544 Fed.Appx. 814, 816 (10th Cir. 2013)(habeas court had no general authority to review state court's evidentiary ruling on hearsay); *Danner v. Motley*, 448 F.3d 372, 375-76 (6th Cir. 2006)(decision to allow child victim testify by closed circuit television was a state law issue not subject to habeas review); see also, *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir.) *cert. denied*, 537 U.S. 1093 (2002)(alleged misapplication of state evidentiary rules permitting hearsay testimony of child sexual abuse victims is insufficient to grant habeas relief). An exception is made if the error in evidentiary decisionmaking is "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Bullock*, 297 F.3d at 1055 (interior quotations omitted). There are no good grounds to apply that exception on this record.

D. Petitioner's claim that the state court overlooked contemporaneous objections to testimony does not warrant habeas relief.

Petitioner's fourth and final argument for relief is that the Kansas Court of Appeals and the Kansas Supreme Court opinions incorrectly found that petitioner's "counsel didn't make contemporaneous objections to testimony." Petitioner asserts that his counsel made the same objections to the evidence, testimony, and opposing counsel's comments in the first and second trials. Petitioner does not articulate in any detail how this alleged error was detrimental to his constitutional rights and does not specify what objection was made, but overlooked by the Kansas Supreme Court. The court assumes that petitioner is referring to his general objections to the trial court's analysis of the Confrontation Clause and hearsay issues, and perhaps to the finding that N.A. was unavailable to testify.

There is nothing on the record, however, to suggest that petitioner's constitutional rights to confront and cross-examine witnesses or to a fair trial were deprived by the trial court or the state appellate courts. The objections made by petitioner's counsel during the first trial, when applied to the second trial, do not serve to identify an unreasonable application of federal law.

IV.  CONCLUSION

For the above-stated reasons, the petition for habeas corpus relief shall be denied.

V.  MOTIONS

The court haa considered petitioner's second and third Motions for Appointment of Counsel (Docs. 27 & 28) and determined that they should be denied.  This matter was decided upon the record, and an evidentiary hearing was not found to be necessary.

V.  CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  *Slack v. McDaniel*, 529 U.S. 473 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  The court concludes that a certificate of appealability should not issue in this case.  Nothing

suggests that the court's ruling resulting in the dismissal of this action is debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE BY THE COURT ORDERED** that petitioner's Motions for Appointment of Counsel (Docs. 27 & 28) are denied, and that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**IT IS SO ORDERED.**

**Dated this 18th day of November, 2014, at Topeka, Kansas.**

**s/Sam A. Crow**
**U. S. Senior District Judge**